Anthony **TORCASIO**

v.

Edward **MURRAY, et al.**

**Civ.A. No. 3:92cv558.**

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 14, 1994.

Anthony Torcasio, pro se.

Mark R. Davis, Office of Atty. Gen., Richmond, VA, for defendants.

### *MEMORANDUM OPINION*

RICHARD L. WILLIAMS, District Judge.

Plaintiff, Anthony Torcasio, a Virginia state prisoner proceeding *pro se* and *in forma pauperis,* brings this action pursuant to 29 U.S.C. § 794, 42 U.S.C. 1983 and 42 U.S.C. 12132. Jurisdiction is appropriate pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

In his original complaint plaintiff alleged the conditions at the Greensville Correctional Center violated the Constitution and statutes of the United States. By Order entered May 20, 1993, the Court granted defendants' motion for summary judgment on plaintiff's Section 1983 claims and found plaintiff's remaining claims to be moot since plaintiff had been transferred to the Keen Mountain Correctional Center (KMCC). The Court of Appeals for the Fourth Circuit affirmed the dismissal of the constitutional claims but vacated the finding that plaintiff's statutory claims were rendered moot by his transfer. The Court of Appeals remanded the case for further proceedings to determine whether the facilities at Keen Mountain were the same as those at Greensville, and, if so, whether such facilities violate 29 U.S.C. § 794 or 42 U.S.C. 12132.

On November 29, 1993, plaintiff filed a complaint in the Western District of Virginia, *Torcasio v. Murray*, 93CV–0655–R, contesting his living conditions at the Keen Mountain Correctional Center. By Order dated December 16, 1993, the case was transferred to this Court. It was redesignated 3:93CV856. By Memorandum and Order entered February 16, 1994, *Torcasio v. Murray*, 3:92CV558 and *Torcasio v. Murray*, 3:93CV856 were consolidated.

Plaintiff is a thirty-three year old male. He is 5′ 7″ tall, weighs in excess of four hundred sixty (460) pounds and has a girth of 78″. Plaintiff asserts his obesity causes him to suffer from the following disabilities:

1) limited walking range, 2) inability to climb steps or hills, 3) back pain, 4) inability to bend over, 5) cannot stand or lay down for prolonged periods of time, 6) sleep apnea[1], 7) extremely vulnerable to body imbalances.

Upon arrival at KMCC plaintiff was initially placed in the infirmary. The infirmary at KMCC was equipped with handicap facilities, *i.e.*, wheelchair accessible, side railings, wide bathroom access, etc. However, because inmates confined to the infirmary are entitled to less freedom and privileges than other inmates, plaintiff requested he be moved to the general population. Subsequently, plaintiff was moved to a single occupancy cell equipped with a hospital bed[2] and a reinforced chair. Plaintiff asserts a number of conditions of confinement violated his constitutional and statutory rights. Listed below are plaintiff's claims, the defendants' response indicating what actions they took, and plaintiff's rebuttal to the response.[3]

### Claim A: The Shower

1) The showers at KMCC are raised seventeen inches from the floor of the bathroom. There is an eight inch step leading from the bathroom floor to the shower stall. 2) The handrail outside of the stall is too small and improperly located to be of any real assistance to plaintiff. 3) There is no other assistance to help plaintiff enter and exit the stall. 4) The entrance to the shower stall is only 23½″ wide. 5) The above deficiencies subject plaintiff to cuts, abrasions, ridicule, and fear of falling whenever using the shower facilities.

Defendants' response: The authorities at KMC constructed bars or handles in plaintiff's shower area in order to facilitate his showering needs. The shower stalls easily accommodate an individual of plaintiff's girth. There are rubber mats on the floor outside the shower which provide protection against wet conditions.

Plaintiff's rebuttal: The handrails in the shower are inadequate. There are rubber mats in front of the showers but the steps are uncovered and slippery. There is no chair in the shower area for handicapped people to use. Plaintiff can only wash himself with one hand because he must balance himself with the other hand. There should be a chair in the shower area to help plaintiff dry himself off. Defendants were well aware of the health hazards posed to plaintiff by normal shower

---

**1.** Plaintiff asserts the sleep apnea can result in weariness, weakness, memory loss, and potential breathing failure during sleep.

**2.** The hospital bed had railings to prevent plaintiff from rolling out of bed.

**3.** Plaintiff's claims are only those issues stated in the first paragraph of each section. Plaintiff's rebuttal is merely a counter to defendants' response.

facilities as evidenced by the notation in his prison medical records form 1991.

### Claim B: The Toilet

1) There are no handrails in plaintiff's cell to assist him in the use of his toilet. 2) The failure to provide handrails for plaintiff's toilet has made it difficult for him to use his bathroom.

Defendant's response: Dr. Quinones states that there is no medical reason why defendant's toilet should be a problem.

Plaintiff's rebuttal: Due to plaintiff's great weight his groin and genitals are often submerged in the toilet bowl.

### Claim C: The Pod Tables

1) The pod tables do not accommodate someone of plaintiff's girth. 2) The table cuts and bruises plaintiff if he attempts to sit at the pod table facing in.

Defendant's response: Prison authorities have provided plaintiff with a reinforced chair in his cell which he can also use in the pod.

Plaintiff's rebuttal: Plaintiff asserts the defendants knew his bad back prevents him from moving the heavy chair.

### Claim D: The Cell Doors

1) The cell doors are 23½ inches wide, accordingly plaintiff is forced to enter the cell sideways. 2) Plaintiff is subject to ridicule and in some instances physical pain from his entry and exit from the cell.

Defendants' response: Defendants have seen plaintiff enter and exit cells without any difficulty. Dr. Quinones is unaware of plaintiff suffering any scrapes or bruises suffered from entering or exiting a cell.

Plaintiff's rebuttal: Plaintiff asserts that he has told the doctor about the scrapes he suffered entering and exiting cells. Plaintiff asserts that by the time he is able to see the doctor his wounds have healed.

### Claim E: Outdoor Recreational Activities

1) The recreation yard is too far from plaintiff's cell. 2) The prison does not offer alternative outdoor recreational activities for someone, like plaintiff who can not walk or stand for long periods of time. 3) There are no suitable chairs for someone of plaintiff's girth in the outdoor recreation yard.

Defendants' response: Dr. Quinones states that he has prescribed walking as part of his medical treatment for plaintiff's condition. Dr. Quinones states that he saw plaintiff walking about the prison without apparent signs of distress. Dr. Quinones further states that plaintiff's physical condition does not allow him to participate in normal outdoor recreational activities. There are sitting benches and bleachers in the yard at KMCC.

Plaintiff's rebuttal: The seating in the yard is far below the standard that Dr. Quinones prescribed when he ordered a special chair for plaintiff's cell. The benches and tables in the yard are inadequate for plaintiff because they do not provide back support. The seating in the yard is too low and plaintiff had difficulty getting up. Additionally, the seating in the yard is not padded as plaintiff requires to prevent sores. Plaintiff reasserts that the yard is too far from his cell.

### Claim F: Indoor Recreational Activities

1) The steel tables in the recreation area do not accommodate a person of plaintiff's girth. 2) Plaintiff's girth prevents him from playing the indoor recreational activities provided by the prison, i.e. weightlifting, pool, pingpong and foosball.

Defendants' response: Dr. Quinones states that plaintiff's physical condition does not permit him to engage in routine athletics and other activities within the gymnasium and recreational areas.

### Claim G: The Building Lobby

1) The lobby area is sometimes wet and slippery. The prison needs to place non-skid matting down in the lobby. Plaintiff's girth makes him more susceptible to slipping and injuring himself severely.

### Claim H: The Dining Hall

1) The tables and chairs in the dining hall are inadequate to accommodate a person of

plaintiff's girth. 2) Plaintiff is forced to stand in line for long periods of time waiting for his food. 3) Plaintiff's girth subjects him to additional verbal abuse from inmates and correctional officers while maneuvering through the narrow food lines. 4) The floor in the dining hall can become wet and slippery, especially in front of the tray window. The prison needs to place non-skid matting down in potentially hazardous areas throughout the dining hall.

### Claim I: Medical Transportation

There are no vehicles at Keen Mountain for transporting the disabled. Plaintiff is forced to step on milk crates in order to enter or exit the vehicles at the prison.

### Claim J: Personal Aid

1) The prison refuses to provide aid to plaintiff in his daily life functions such as dressing, personal hygiene, and cell maintenance. 2) At night, the prison does not provide plaintiff with an adequate means of signaling the staff in case of a medical emergency. There is a call button in plaintiff's cell, however the guards do not respond in a timely fashion, when they respond at all.

### Claim K: The Commissary Window/Pill Line

There is no seating offered at the commissary window or pill line.

### Claim L: The Location of the Housing Unit

1) Plaintiff's housing unit is located over one hundred yards away from every other support facilities, i.e. gym, medical, law library, etc. 2) Plaintiff's weight makes it difficult for him to make the frequent trips to the support facilities.

Defendants' response: Plaintiff's cell is on the first floor in a pod that is the closest to the canteen, medical department, and pill line. Additionally, Dr. Quinones has prescribed walking as part of plaintiff's medical treatment. Plaintiff is given extra time to get from place to place.

Plaintiff's rebuttal: Plaintiff is not given extra time to get from place to place.

### Claim M: The Plaintiff's Cell

1) Plaintiff's cell is too small to accommodate plaintiff and his larger than regulation bed. 2) Plaintiff asserts that he is unable to effectively use the sink in his cell because of his back.

Defendants' response: Plaintiff was given a single occupancy cell even though many of the cells of the same size at KMC house two inmates. Dr. Quinones asserts there is no medical reason why plaintiff should be unable to use the sink in his cell.

Plaintiff's rebuttal: Plaintiff's bed was inadequate and once broke under his weight. Plaintiff is unable to stand for long periods of time. Plaintiff can not use a chair to use the sink because of the cramped quarters in his cell.

### Claim N: Complaints Related to Confinement at Nottoway Correctional Center Infirmary Between March 19 and April 22, 1993

1) The lights in the infirmary were left on twenty-four hours a day causing plaintiff headaches. 2) There were no hand rails in the showers and toilet. 3) Plaintiff was denied the same privileges as members of the general population. 4) Plaintiff was verbally abused by correctional officers. 5) There was no handicapped transportation available at Nottoway. Plaintiff had to step on a milk crate in order to enter and exit the prison van. There were no seat belts in the prison van.

Defendants' response: Plaintiff was provided with two beds joined together for sleeping. There are no railings in the shower, however, plaintiff never raised this issue while at Nottoway. Plaintiff had access to the gymnasium and recreation yard just as any other general population inmate. The infirmary where plaintiff was housed had television for his viewing. Plaintiff had a special chair to accommodate his weight.

Plaintiff's rebuttal: The beds were on wheels, whenever plaintiff rolled over the beds would split apart. Plaintiff never had

an opportunity to address his concerns about the shower to Nurse Epperson. Defendants were well aware of the health hazards posed to plaintiff by normal shower facilities as evidenced by the notation in his prison medical records form 1991. Plaintiff denies that he ever had access to the recreation yard and gymnasium. Plaintiff did not have a special chair to accommodate his weight. Plaintiff was given a standard plastic prison chair which cracked under his weight. Plaintiff asserts that he did not get cable television like the other inmates in general population.

During his incarceration in the general population at KMCC and Nottoway Correctional Center (NBC), plaintiff alleges the above conditions of confinement violated (1) the Rehabilitation Act of 1973 (the Act), (2) Title II of the Americans with Disabilities Act (ADA),[4] and (3) his constitutional rights guaranteed by the Eighth and Fourteenth Amendments.

Defendants have moved for summary judgment and plaintiff has responded. On June 28, 1994, plaintiff informed the Court that he had been paroled from prison and was currently residing in Connecticut. Accordingly, the Court must *sua sponte* consider the scope of its jurisdiction to address plaintiff's claims for relief under the Rehabilitation Act and the ADA. *See, Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977); *LaFaut v. Smith,* 834 F.2d 389, 395 n. 9 (4th Cir.1987).

The remedies available to plaintiff under the ADA and the Rehabilitation Act are the same. 42 U.S.C. § 12133. Section 12133 provides, "the remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." The United States Court of Appeals for the Fourth Circuit had held that plaintiffs are not entitled to monetary damages under section 794a of the Rehabilitation Act. *East-*

man v. Virginia Polytechnic Inst., & State University, 939 F.2d 204, 209 (4th Cir.1991). However, in *Pandazides v. Virginia Bd. of Educ.,* 13 F.3d 823, 831 (4th Cir.1994), the Fourth Circuit overruled its decision in *Eastman,* holding that under certain circumstances plaintiffs proceeding under the Rehabilitation Act are entitled to the full panoply of legal remedies.[5]

■ Plaintiff also seeks injunctive relief. Parole moots a prisoner's claim for injunctive relief. *See Inmates v. Owens,* 561 F.2d 560 (4th Cir.1977) (holding that with the exception of one inmate who was rearrested but did not appeal, all other inmates who sought injunctive relief relating to the conditions of confinement complained of were no longer subjected to alleged treatment once they were released). Additionally, the possibility that the plaintiff will violate his parole and be returned to the same institution is too speculative to create a valid case or controversy. *See Williams v. Griffin,* 952 F.2d 820, 822 (4th Cir.1991). An Article III Court is without jurisdiction, "to decide questions that cannot affect the rights in the case before them." *LaFaut,* 834 F.2d at 395 (citing *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971)). Accordingly, plaintiff's claims for injunctive relief will be DISMISSED.

Defendants have moved for summary judgment on the following grounds:

1. The Rehabilitation Act of 1973 does not apply to state prisoners;

2. The plaintiff has failed to properly plead a claim under the Rehabilitation Act of 1973;

3. The Americans with Disabilities Act does not apply to state prisoners;

4. The defendants have not subjected plaintiff to cruel and unusual punishment in violation of the Eighth Amendment;

---

**4.** The Court also construes plaintiff as bringing section 1983 claims premised upon violations of the Rehabilitation Act and the ADA.

**5.** The Fourth Circuit's ruling was compelled by the Supreme Court's decision in *Franklin v.*

*Gwinnett County Pub. Sch.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

5. The defendants have not discriminated against plaintiff because of any physical handicap;

6. All defendants are entitled to qualified good faith immunity from a monetary damages award for any violation of plaintiff's rights under 42 U.S.C. § 1983;

7. Defendants Terry and Rosenthal are not proper parties to this lawsuit.

■ To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The Court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem)." *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980).

### Application of Rehabilitation Act to State Prisoners

■ Defendants assert that the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., does not apply to state prisoners. Defendants argue that prisoners are a special class of individuals and that Congress never intended the Rehabilitation Act to apply to state prisons.

Section 504 of the Act prohibits a federally funded state program from discriminating against an individual solely on the basis of an individual's handicap. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 275, 107 S.Ct. 1123, 1125, 94 L.Ed.2d 307 (1987). The plain language of the Act counsels for an expansive interpretation of which entities are regulated by the Act, "No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794 (1982) (emphasis added). Both the stated goals and plain language of the Act indicate that state prisons may be subject to the provisions of the Rehabilitation Act. *Harris v. Thigpen*, 941 F.2d 1495, 1522 (11th Cir.1991); *Bonner v. Lewis*, 857 F.2d 559, 562 (9th Cir.1988); *Sites v. McKenzie*, 423 F.Supp. 1190, 1197 (N.D.W.Va.1976). Accordingly, the provisions of the Act are applicable to state prisoners.

### Legal Sufficiency of Plaintiff's Claim Under the Rehabilitation Act

■ Defendants next assert that even if the Rehabilitation Act is applicable to state prisoners, plaintiff has failed properly to plead a claim for relief under the Rehabilitation Act. To establish a prima facie case of a violation of section 504, plaintiff must show that: (1) he is a "handicapped person" under the Act; (2) he is otherwise qualified for the program; (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) the relevant program or activity receives federal financial assistance. *Landefeld v. Marion Gen. Hosp. Inc.*, 994 F.2d 1178, 1180–81 (6th Cir.1993).

■ In effect defendants are making a Fed.R.Civ.P. 12(b)(6) motion. Allegations by a *pro se* plaintiff, however inartfully pleaded, are sufficient to call for an opportunity to offer supporting evidence, unless it is beyond a doubt that plaintiff could prove no set of facts that would entitle him to relief. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The claim set forth in the complaint does not specifically allege receipt of federal funds. He does, however, assert the receipt of federal funds in his response to defendants' answer. That is sufficient to act to cure the defect in the complaint. *See Elmore v. Corcoran*, 913 F.2d 170 (4th Cir.1990).

### Inapplicability of the ADA to State Correctional Facilities

■ Defendants argue the ADA should not apply to state prisoners for the same reasons they asserted the Rehabilitation Act was inapplicable. In order to establish a claim under Title II of the ADA, plaintiff must be 1) a qualified individual 2) with a

disability 3) who by reason of such disability was discriminated against or denied the benefits of the services, programs or activities 4) by a public entity. 42 U.S.C. § 12132. Defendants apparently contend that Congress did not intend the Virginia Department of Corrections to be included within the definition of a public entity. Section 12131 defines the term "public entity" to include any state or local government and any department, agency or special purpose district of a State or local government. 42 U.S.C. § 12131. The Virginia Department of Corrections fits the definition of a "public entity" under the ADA. *Id.* One of the stated purposes of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). A number of Courts have also determined that the Americans with Disabilities Act applies to state inmates. *See Candelaria v. Coughlin*, 1994 WL 119146, *7 1994 U.S.Dist.LEXIS 3999, *19 (S.D.N.Y. April 11, 1994; *Noland v. Wheatley*, 835 F.Supp. 476, 487 at 66 (N.D.Ind.1993). Additionally, the Architectural and Transportation Barriers Compliance Board has promulgated a series of interim final rules pursuant to Title II of the ADA setting accessibility guidelines for state and local correctional facilities. 59 Fed.Reg. 31676, 31699–711 (June 20, 1994). [Hereafter interim rules ADA Rules]. The ADA is applicable to state prisoners.

▮ Even if the ADA and Rehabilitation Act are applicable to state facilities, defendants assert that they are entitled to qualified immunity for all of their actions. In determining whether the individual defendants are entitled to qualified immunity for their actions, the court considers whether plaintiff alleged any violation of a clearly established right and, if so, whether the defendants' conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231–33, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277 (1991). The court does not assume plaintiff has established a claim; plaintiff must demonstrate that if the facts as alleged by him are true, a violation clearly has occurred. *Siegert*, 500

U.S. at 231–33, 111 S.Ct. at 1793–94. Accordingly, the Court will address whether plaintiff has established a claim for relief under the Eighth Amendment, the Rehabilitation Act or the ADA prior to addressing merits of defendants' claim for qualified immunity.

### Violations of the Eighth Amendment

▮ In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both, "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams*, 952 F.2d at 824. However, "because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave for the basis of an Eighth Amendment violation.' " *Strickler v. Waters*, 989 F.2d 1375, 1380 n. 3 (4th Cir.1993) (quoting respectively, *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), and *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (in turn quoting *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399)). Plaintiff's allegations concerning the adequacy of his commode is the only instance in which plaintiff has established a viable eighth amendment claim. None of plaintiff's other complaints amount to a serious deprivation of a basic human need coupled with deliberate indifference by prison officials. Accordingly, with the exception of Claim B, all claims based upon the Eighth Amendment will be DISMISSED.

### Violations of the Rehabilitation Act and the ADA

▮ Defendants argue that they did not discriminate against plaintiff in violation of the Rehabilitation Act and the ADA[6]. They assert plaintiff was not denied access to any "programs" or "services" because of his disability and that the ADA requires only that

---

**6.** Defendants do not distinguish between their duties owed to plaintiff under the ADA and the Rehabilitation Act. Therefore, for the purposes

of addressing this motion the court will hold defendants to the generally higher standards of the ADA.

"reasonable modifications" be made in order to avoid discrimination. 28 C.F.R. § 35.130(b)(7).

 The "services, programs, and activities provided or made available by public entities" are not explicitly defined in Title II of the ADA or the pertinent regulations, 28 C.F.R. § 35.102. However, the appendix to the regulations promulgated pursuant to Title II states:

Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), which prohibits discrimination on the basis of handicap in federally assisted programs and activities, already covers those programs and activities of public entities that receive Federal financial assistance. Title II of the ADA extends this prohibition of discrimination to include all services, programs and activities provided by State and local government agencies, regardless of the receipt of Federal financial assistance.

28 C.F.R.App. A § 35.102. Under the Rehabilitation Act of 1973, the term "program or activity" was defined to include all of the operations of a department, agency, special purpose district or other instrumentality of a State or local government. 29 U.S.C. § 794(b)(1). 28 C.F.R. §§ 35.149—151 interpreting Title II of the ADA states that with regard to existing facilities, "[a] public entity shall operate each service, program or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). Moreover, the interim ADA rules deal extensively with accessibility requirements in state correctional facilities. 59 Fed.Reg. 31699–711. Accordingly, the Virginia Department of Corrections is required to make its facilities and programs readily accessible to individuals with disabilities.

In effectuating the policy of making facilities and programs readily accessible to individuals with disabilities, defendants are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimi-

nation on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, activity or program." [7] 28 C.F.R. § 35.130. "Whether a defendant has made a reasonable accommodation to an individual with a disability is ordinarily a question of fact." *Vande Zande v. Wisconsin*, 851 F.Supp. 353 (W.D.Wis. 1994); *citing, McWright v. Alexander*, 982 F.2d 222 (7th Cir.1992). Summary judgment may be awarded only when there is no dispute about the nature of the accommodations made and where no reasonable juror could determine the accommodations made were unreasonable. *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850 (5th Cir. 1993). Considering each of plaintiff's complaints in Claims A–F and L–N, the defendants' responses and plaintiff's rebuttal evidence, a reasonable juror could find defendants' accommodations were unreasonable. Claim N presents the further question of whether any responses were made at all.

### Qualified Immunity

 Qualified immunity insulates government officials from civil damages liability when the officials' actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Evaluating a defense of qualified immunity involves three discrete determinations: (1) identification of the specific right allegedly violated; (2) determination of whether the right was so clearly established as to put a reasonable official on notice of his legal obligations; and (3) evaluation of whether a reasonable official in defendants' situation could have believed his conduct was reasonable. *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir.1990).

In the most general sense, plaintiff has the right to be free from discrimination in the provision of government services pursuant to the ADA and the Rehabilitation Act. But the proper focus is not the right at its most

---

7. At no point in their motion for summary judgment do defendants assert that they are not required to make a modification because it would, "fundamentally alter the nature of the service, activity, or program." 28 C.F.R. § 35.130.

general level, but its application to the particular conduct being challenged. *Id.* The right must be defined in a particularized sense; its contours must be sufficiently clear that a reasonable official would understand that his conduct violates that right. *Gooden v. Howard County,* 954 F.2d 960, 968 (4th Cir.1992). In the present case the disputed right is a morbidly obese inmate's right to the modification of specific services and facilities.

For a right to be clearly established, the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). A key question is "whether the law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful...." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.[8] An officer must consider whether there are analogous legal principles in other areas which might apply to his current situation, but he is not expected to recognize the significance of a few scattered cases from disparate areas of the law. *Gooden,* 954 F.2d at 968.

In the present case it is clear that correctional facilities were subject to the provisions of the ADA and Rehabilitation Act. *Bonner,* 857 F.2d at 562; *Harris,* 941 F.2d at 1522; *Noland,* 835 F.Supp. at 488; *Sites,* 423 F.Supp. at 1197.[9] However, the extent of an institution's affirmative duties to accommodate an individual with plaintiff's disability was not clearly defined. *See McGregor,* 3 F.3d at 858.[10] Tolerance for a range of

reasonable public actions is particularly important for those who must interpret often imprecise or incomplete legal precedent. *Swanson v. Powers,* 937 F.2d 965, 968 (4th Cir.1991). Of course this is not to say that defendants are automatically shielded by qualified immunity because the very actions in question have not been previously held unlawful; but it is to say in light of pre-existing law the unlawfulness must be apparent. *Gooden,* 954 F.2d at 968.

■ Finally, the Court must determine whether reasonable officials in defendants' positions could have believed that their conduct was lawful. If public officials of reasonable competence could differ on the lawfulness of defendants' actions, the defendants are entitled to qualified immunity. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The very nature of the reasonableness test requires the Court to accord interpretative latitude to official judgments. *Torchinsky v. Siwinski,* 942 F.2d 257, 261 (4th Cir.1991). Accordingly, officials are entitled to qualified immunity for a violation of the ADA or Rehabilitation Act if their actions could reasonably have been thought to have been consistent with an individual's rights under the respective statutes. *Noland,* 835 F.Supp. at 488.

**Shower** (Claim A)

■ The defendants recognized that they needed to take certain steps in order to accommodate plaintiff's disability with regard to the showers. Defendants subsequently made a number of modifications to the showers and allowed plaintiff to carry his reinforced chair into the pod. Plaintiff's assertion that the defendants should have done more does not defeat their defense of qualified immunity. The proper focus at this

---

**8.** Defendants' motion for summary judgment on the issue of qualified immunity does not clearly distinguish between the status of the law under the ADA and Rehabilitation Act at the time of the alleged violations. Accordingly, the Court will hold defendants to the higher standard under either act in ruling on the motion for summary judgment.

**9.** There has been some doubt as to whether federal correctional facilities are subject to the pro-

visions of the Rehabilitation Act. *Williams v. Meese,* 926 F.2d 994 (10th Cir.1991); *LaFaut,* 834 F.2d at 395. However, neither of the above cases indicated that state correctional institutions were not subject to the Rehabilitation Act.

**10.** No United States Court of Appeals has provided guidance on what might constitute reasonable accommodation of a morbidly obese inmate.

point is not whether defendants provided reasonable accommodations within the strictures of a particular statute, but whether defendants could reasonably have believed their actions were consistent with their obligations under the ADA and Rehabilitation Act. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. Finding that defendants could reasonably have believed their actions to be lawful, defendants' motion for summary judgment will be GRANTED on Claim A.

### Toilet (Claim B)

Defendants assert that they did not need to provide any special features with regard to his toilet because it was completely adequate for plaintiff's uses. Plaintiff contests the above assertion and states specific problems regarding his ability to use the toilet. There exists a material issue of fact as to whether defendants could have reasonably believed that plaintiff's toilet was adequate for his uses. Accordingly, defendants' motion for summary judgment will be DENIED on Claim B.

### Pod Tables (Claim C)

Defendants recognized that plaintiff could not use the pod tables and assert that they accommodated plaintiff by providing him a reinforced chair in his cell which could be moved into the pod. Plaintiff asserts that he could not move the chair because it was too heavy for him to lift. More importantly, plaintiff asserts that Dr. Quinones knew plaintiff's back would not permit him to move the chair around. Accepting plaintiff's assertions, defendants could not reasonably have believed that they had met their obligations to plaintiff by providing him with an impracticable accommodation. Accordingly, plaintiff's motion for summary judgment will be DENIED on Claim C.

### Cell Doors (Claim D)

Defendants assert that they did not need to change the cell doors because they had observed plaintiff entering and exiting the cells without any difficulty. Plaintiff asserts that he informed the doctor about the scrapes and bruises he suffered entering and exiting his cell. There exists a material issue of fact as to whether defendants could have reasonably believed that cell doors were adequate for plaintiff's uses. Accordingly, defendants' motion for summary judgment will be DENIED on Claim D.

### Outdoor Recreational Activities and Facilities (Claim E)

Defendants contend that the recreational activities and facilities were adequate for the plaintiff. Dr. Quinones asserts that he prescribed walking as part of the treatment for plaintiff's medical condition and that plaintiff's physical condition prohibited him from participating in normal outdoor recreational activities. Plaintiff fails to state what alternative recreational activities the defendants refused to provide. In light of the overall purpose of the yard and plaintiff's prescribed treatment, plaintiff's assertion that the seating in the recreation yard was inadequate will fail to overcome the defense of qualified immunity. Defendants could reasonably have believed their actions were lawful, therefore, the motion for summary judgment will be GRANTED on Claim E.

### Indoor Recreational Activities and Facilities (Claim F)

Dr. Quinones asserts that plaintiff's physical condition prevented him from participating in many of the indoor recreational activities. Plaintiff has failed to assert what alternative activities he requested that defendants have failed to provide. Accordingly, defendants could reasonably have believed their inaction to be lawful. Defendants' motion for summary judgment will be GRANTED on Claim F2. Defendants have not responded to plaintiff's assertion that the tables are inadequate. Accordingly, defendants' motion for summary judgment will be DENIED on Claim F1.

### Location of Housing Unit (Claim L)

Defendants assert that they have provided plaintiff with a cell that was located on the first floor and was the closest to a number of support facilities. Additionally, defendants reassert that Dr. Quinones had prescribed walking as part of plaintiff's medical treatment and that plaintiff was given

extra time to get between his different destinations. Plaintiff contends that he was not given extra time to get between different facilities. Defendants' motion for qualified immunity in the selection of plaintiff's housing unit will be GRANTED in part on Claim L. However, there exists a material issue of fact as to whether plaintiff was given extra time to travel between buildings; with respect to that issue defendants motion for summary judgment will be DENIED in part on Claim L.

**Plaintiff's Cell** (Claim M)

 Defendants assert plaintiff was provided with a hospital bed instead of a regular bed; a single occupancy cell, even though a cell of that same size often held two inmates; and a wall locker instead of a floor locker. Dr. Quinones further contends that there was no medical reason why plaintiff could not use his sink. Plaintiff has responded that the cell was cramped, the bed once broke under his weight and that he could not stand for long periods of time to use the sink. Defendants are entitled to qualified immunity since they could reasonably have believed their actions to have been consistent with an individual's rights under the ADA and Rehabilitation Act. The defendants' motion for summary judgment will be GRANTED on Claim M.

**Complaints Related to Confinement at Nottoway Correctional Center Infirmary Between March 19 and April 22, 1993** (Claim N)

 Defendants have not addressed plaintiff's complaints concerning verbal abuse by officers, inadequate medical transportation, and the twenty-four hour lighting in the infirmary. Accordingly, to the extent defendants seek summary judgment on claims N1, N4, and N5, the motion will be DENIED. Plaintiff asserts that there were no handrails in the shower or commode and that his confinement to the infirmary denied him access to privileges enjoyed by inmates in the general population. Defendants contend that plaintiff never informed the administration that he needed handrails in the shower area. Defendants also contend that plaintiff was not denied access to any of the privileges available to the inmates in general population. Plaintiff's assertion that the single reference in his medical records is sufficient to put a reasonable official on notice that his action or inaction was violating the plaintiff's rights is clearly inadequate. Accordingly, defendants' motion for summary judgment will be GRANTED on Claim N2. However, since plaintiff directly refutes the assertion that he was afforded the same privileges as those inmates in general population, a material issue of fact is in dispute and the motion for summary judgment will be DENIED on Claim N3.

The defendants have failed to address plaintiff's Claim G (the building lobby), H (the dining hall), I (medical transportation), J (personal aid), or K (commissary window/pill line). To the extent defendants seek summary judgment on those claims, the motion is DENIED.

*Dismissal of Rosenthal and Terry*

 Defendants have moved for summary judgment of former Attorneys General Rosenthal and Terry. The maintenance of the correctional facilities in Virginia is the province of the Director of the Virginia Department of Corrections. Va.Code § 53.1–10. The Attorney General's interaction with the Department of Corrections is limited to providing legal services and advice. Va.Code §§ 2.1–118 and 2.1–121. Neither Terry or Rosenthal were responsible for the maintenance of state correctional facilities. An attorney offering advice in good faith is not liable for the torts of his client. *Buschi v. Kirven,* 775 F.2d 1240, 1250 (4th Cir.1985). Plaintiff fails to state what legal duties Rosenthal and Terry owed him and how those duties were breached. Accordingly, defendants' motion for summary judgment will be GRANTED. All claims against defendants Terry and Rosenthal will be DISMISSED.

The case will be REFERRED to the Honorable David G. Lowe, United States Magistrate Judge, for further action.

An appropriate Order shall issue.