**Steven Lamont Joel SCOTT, Plaintiff,**

v.

**Loretta K. KELLY, et al., Defendants.**

**No. CIV.A. 00–272–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 31, 2000.

Steven Lamont Joel Scott, Capron, VA, for Plaintiff.

## MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff Steven Lamont Joel Scott, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983 alleging that his constitutional rights were violated at Deep Meadow Correctional Center (DMCC). Scott's original complaint named ten defendants[1] and alleged violations that included denial of access to the courts and denial of due process through improper termination from employment, improper administrative discipline, and an improper transfer. By Order dated March 20, 2000, several defendants and claims were dismissed and Scott was instructed to amend his complaint to state with clarity and specificity his injury from the alleged denial of access to the courts. In response, Scott filed a document entitled "First Amended Complaint," which was appropriately construed as a series of motions. After resolution of these motions, by Order dated May 9, 2000, Scott was again directed to amend his complaint of denial of access to the courts.

On June 12, 2000, Scott filed another document entitled "First Amended Complaint." In this amended complaint, Scott names twenty-one defendants[2] and alleges six counts of constitutional violations.[3]

A review of the amended complaint compels the conclusion that Scott has failed to

1. These defendants were Warden Loretta K. Kelly; Assistant Warden A.R. Moore; Law Librarian Deborah G. Woodson; Captain Artis; Captain Jones; Lieutenant Gregory; Sergeant Richardson; Sergeant K. Milling; Officer V. Jones; and Mark Earley, Attorney General of Virginia.

2. In his amended complaint, Scott names as defendants the following individuals at DMCC: Warden Loretta K. Kelly; Assistant Warden A.R. Moore; Law Librarian Deborah G. Woodson; Captain Artis; Captain Jones; Lieutenant Gregory; Sergeant Richardson; Sergeant K. Milling; Counselor B. Harris; Grievance Coordinator D. Graham; and Officer V. Jones.

Scott has also named the following individuals at Powhatan Reception and Classification Center (PRCC): Warden Alton Baskerville; Captain Rowlette; Grievance Coordinator R. Bedwell; Sergeant Coleman; Officer Ojo; and Lieutenant Thomas.

Finally, Scott includes Ronald Angelone, Director of the Virginia Department of Corrections (VDOC), W.P. Rogers, VDOC Regional Director, and Assistant Attorney General Virginia B. Theisen as defendants.

Scott has not alleged that Angelone, Rogers, and Theisen were individually responsible for any of his alleged injuries. Therefore, these defendants must be dismissed. To establish § 1983 liability, a plaintiff must show affirmatively that the "official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir.1985) (citations and quotations omitted). *Accord Garraghty v. Commonwealth of Virginia*, 52 F.3d 1274, 1280 (4th Cir.1995); *Wheeler v. Gilmore*, 998 F.Supp. 666, 668 n. 5 (E.D.Va.1998).

3. Though Scott's amended complaint employs counts as organizational units, parsing the complaint reveals that individual counts often contain multiple constitutional claims.

allege sufficient facts to establish a claim of denial of access to the courts. Therefore, this claim must be dismissed under 28 U.S.C. § 1915A.[4] In addition, several of the claims presented in the amended complaint were previously dismissed by the March 20, 2000 Order. Therefore, these claims will not be reviewed again and must remain dismissed. Scott also raises a claim of discrimination under the Americans with Disabilities Act (ADA). Because he has not alleged sufficient facts to support this claim, it must also be dismissed. Finally, Scott has included new allegations against different defendants at a different prison. Because the addition of these new claims exceeds the scope of the March 20, 2000 Order and frustrates the purpose and policy in 28 U.S.C. § 1915A, they must be dismissed without prejudice. Scott may reassert these claims in a separate cause of action.

### I.

In reviewing complaints pursuant to § 1915A, courts should dismiss prisoner complaints that are frivolous, malicious or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Frivolous complaints are those that are based on "inarguable legal conclusion[s]" or "fanciful factual allegation[s]." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (examining identical language of predecessor statute to § 1915A). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker*, 9 F.Supp.2d 641, 642 (E.D.Va.1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear

that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### II.

*Count I*

In Count I of his amended complaint, Scott alleges that he has been denied access to the courts because he was not permitted to photocopy legal documents. In this regard, Scott states that in the course of pursuing a petition for state habeas corpus in December 1999 he attempted to file a motion opposing Assistant Attorney General Theisen's request for an extension of time. He states that Woodson, Moore, Milling, and V. Jones refused to make copies and that Woodson closed the law library between January 1 and January 4, 2000 to prevent him from using the typewriters to create duplicates. He claims this constitutes denial of access to the courts because he was hindered from filing a motion by the deadline of January 7, 2000. Yet, Scott also indicates later in his complaint that he received the requested copies on January 5, 2000. (Pl.'s Am. Compl., at 7, ¶ 25.) Moreover, he has attached copies of orders from the Supreme Court of Virginia which indicate that he timely filed two motions, including the motion opposing the extension of time. (Pl.'s Am. Compl., Ex. 18.)

█ The Supreme Court has stated that prisoners must be allowed access to the courts that is "adequate, effective and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72

---

4. 28 U.S.C. § 1915A provides:

(a) Screening.—The court shall review, before docketing, if feasible, or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
(1) is frivolous, malicious or fails to state a claim upon which relief can be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

(1977) (holding that prisons must give in- mates access to law libraries or direct legal assistance). However, "inmates do not have unlimited rights to photocopies or photocopying machines." *Lyons v. Clark*, 694 F.Supp. 184, 188 (E.D.Va.1988), *aff'd*, 887 F.2d 1080 (4th Cir.1989); *see also Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir.1991) ("A denial of free photocopying does not amount to a denial of access to the courts."). To state a claim, therefore, a prisoner must show that his access to the courts was effectively impeded by the de- nial, not just that the denial was unreason- able. *See Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir.1985); *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir.1983)· (holding that if denial of access "is unreasonable but not impeding [plaintiff] has not made out a prima facie case of violation of his constitutional rights.").

■ Scott does not specifically allege how his habeas corpus proceeding was im- peded. The documents he has attached indicate that his materials were timely filed and were considered by the Supreme Court of Virginia. Although his opposition to the extension of time for respondent was rejected, Scott has not alleged this rejection was in any way related to the denial of photocopies.[5] Thus, Scott has not sufficiently alleged that the delay in photocopies impeded his habeas proceed- ing and therefore his claim of denial of access to the courts fails.

5. Simply because plaintiff did not prevail on his motion opposing the extension does not mean he was denied meaningful access to the courts. Respondent's motion for extension of time was well-founded. Scott has included a copy of this motion which shows that respon- dent alleged good cause for the extension. (Pl.'s Am. Compl., Ex. 3a.) Moreover, such extensions are routine.

6. *See Hudspeth v. Figgins*, ˙584 F.2d 1345, 1347 (4th Cir.1978), ˙cert. denied, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979). *See also Williams v. Meese*, 926 F.2d 994, 998 (10th Cir.1991); *Farr v. Blodgett*, 810 F.Supp. 1485, 1490 (E.D.Wash.1993).

■ Scott also claims in Count I that the refusal to provide photocopies was in retaliation for complaints he has filed with the Federal Bureau of Investigation and the United States Department of Justice concerning unconstitutional errors in his trial. It is true that prison officials may not retaliate against an inmate for exercis- ing a constitutional right.[6] But to succeed on this claim, plaintiff must first allege that "the retaliatory act was taken in re- sponse to the exercise of a constitutionally protected right...." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995). Thereafter, plaintiff must demonstrate that he suffered some ad- verse impact or actual injury.[7] In addi- tion, plaintiff must come forward with spe- cific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred."[8]

Scott claims that this retaliation was in response to his exercise of his right of access to the courts or his right to petition the government for redress. Yet, he has alleged no facts to show that he suffered any adverse impact. As discussed above, he has not alleged that he was harmed from the delay in receiving the photocop- ies. To the contrary, it appears he was able to file timely motions in his state habeas proceedings. Therefore, because he was not injured, he has not stated a claim of retaliation.

Finally, Scott claims in Count I that he was denied access to grievances. In this

7. *See American Civil Liberties Union of Mary- land, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir.1993) (citing *Huang v. Board of Governors of Univ. of North Carolina*, 902 F.2d 1134, 1140 (4th Cir.1990)).

8. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995); *accord Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); *Collinson v. Gott*, 895 F.2d 994, 1002 (4th Cir.1990) (Phillips, J., concurring); *McDonald v. Hall*, 610 F.2d 16, 18–19 (1st Cir.1979).

regard, he states that though he filed grievances, these grievances were either disregarded or the underlying issues were determined nongrievable. He also alleges that Moore interfered with his right to grieve by persuading him to withdraw a grievance and taking his receipt, thereby depriving him of any record that the grievance was filed.

■ Scott's claim here must also fail because state inmates have "no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994), *cert. denied,* 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995); *Mitchell v. Murray,* 856 F.Supp. 289, 294 (E.D.Va.1994). It is also settled that "[w]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *see also Adams,* 40 F.3d at 75. Thus, if plaintiff believes that defendants' failure to respond to grievances has resulted in injury to plaintiff's constitutionally protected interests, plaintiff may file a claim under 42 U.S.C. § 1983 to redress that particular injury.

Because Scott has not sufficiently alleged his claims of denial of access to the courts, retaliation, or denial of access to grievances, Count I must be dismissed pursuant to 28 U.S.C. § 1915A.

*Counts II and III*

In Counts II and III, Scott alleges a series of due process violations, including

improper termination from his job in the prison law library, improper administrative discipline for threatening Officer V. Jones, and a wrongful transfer from DMCC to PRCC. Scott also claims that he was denied access to grievances concerning these events.

Scott raised identical allegations in his original complaint, which were dismissed as legally insufficient under 28 U.S.C. § 1915A(b)(1) by the March 20, 2000 Order. Therefore, these claims will not be reconsidered and they remain dismissed.[9]

*Count IV*

In Count IV, Scott alleges that he belongs to the class of individuals who have "developmental disabilities." He states that the allegations in Counts I, II, and III constitute discrimination for filing a complaint with the Department of Justice in violation of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Equal Protection Clause.

■ The ADA provides that "no qualified individual with a disability shall, *by reason of such disability,* be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1994) (emphasis added).[10] Furthermore, it is now settled that the ADA applies to state prisons and correctional facilities. *See Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 209, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (holding that Congress intended the ADA to apply to prisons).[11]

---

**9.** The reintroduction of these claims is additionally improper because the March 20, 2000 Order directed plaintiff only to restate his claim of denial of access to the courts, the remaining claims having been considered and dismissed. Moreover, a motion to reconsider dismissal of these claims was denied by the Order dated May 9, 2000. These claims do not acquire the merit they lack from repeated restatement.

**10.** The ADA further defines a public entity as either "(A) any State or local government [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131 (1994).

**11.** In *Yeskey,* the Supreme Court expressly declined to rule on whether application of the ADA to state prisons was a constitutional exercise of Congress's legislative power, either under § 5 of the Fourteenth Amendment or

■ Scott, however, has not claimed that he was subject to illegal discrimination because of his disability, but rather because he exercised his constitutional rights in petitioning the Department of Justice. Therefore, his claim amounts to one for retaliation. As discussed above, because Scott has failed to allege an actual injury, this claim must be dismissed. Moreover, even if Scott were entitled to relief under the ADA, this relief would be the right to "reasonable accommodation." [12] Therefore, Count IV must be dismissed pursuant to 28 U.S.C. § 1915A.

*Counts v. and VI*

In these counts, Scott makes new allegations of constitutional violations at PRCC since his transfer on January 13, 2000 and since he filed his initial complaint in this action on January 20, 2000. He also names several PRCC employees as new defendants. These allegations are not connected to his previous claims at DMCC, but state new claims, including exposure to environmental tobacco smoke, denial of access to courts and legal material, interference with legal mail, denial of access to grievances, and retaliation.

These new claims and defendants must be dismissed without prejudice. Several

reasons compel this result. First, the addition of these claims exceeds the permissible scope of amendment in the March 20, 2000 Order. Scott was instructed to amend only his claim of denial of access to courts at DMCC. He was not allowed to add new claims of constitutional violations since his original complaint. Therefore, these additions are inappropriate under Fed.R.Civ.P. 41(b). Moreover, permitting Scott to amend his complaint to include new, unconnected claims which have arisen since his initial filing defeats the purposes of filing fees and the "three strikes" provisions in 28 U.S.C. § 1915(g). By folding these unrelated, new claims into an ongoing action, Scott attempts to circumvent paying the filing fee for a new civil action. He also escapes the preliminary screening requirement of 28 U.S.C. § 1915A and the possibility of obtaining a "strike," which would affect his ability to file future *in forma pauperis* actions. *See* 28 U.S.C. § 1915(g) (Supp. IV 1998) (a plaintiff who has filed three or more actions dismissed under 28 U.S.C. § 1915A may not proceed *in forma pauperis* ).

Therefore, Scott's attempts to include these new allegations and defendants are inappropriate. These must be dismissed without prejudice. Scott may refile these in a separate civil action.

the Commerce Clause. *See id.* at 212, 118 S.Ct. 1952. A Fourth Circuit panel addressed that precise issue in *Amos v. Maryland Department of Public Safety and Correctional Services,* 178 F.3d 212, 221 n. 8 (4th Cir.1999), holding that Congress acted within its § 5 authority when it enacted the ADA with the intention that it would apply to state prisons. Following that decision, the Fourth Circuit granted a rehearing *en banc* and vacated the *Amos* decision, but before oral argument could be heard, the parties in the case reached a settlement and, pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure, agreed to a dismissal of the case. *See* 205 F.3d 687 (4th Cir.2000). Thus, in the absence of controlling authority, the *Amos* decision will be regarded as persuasive, and it will be assumed that application of the ADA to state prisons is constitutional.

12. Though this claim is properly construed as a retaliation claim, it is also insufficient under

the ADA. To state a claim under the ADA, a plaintiff must typically show discrimination in the form of an inability to participate in or obtain benefits from a particular public service. Thus, the plaintiff can allege he or she is entitled to reasonable accommodation in accessing that service. *See, e.g., Torcasio v. Murray,* 862 F.Supp. 1482, 1491–92 (E.D.Va. 1994) (finding that morbidly obese inmate had stated ADA claim because prison facilities, including doors, were unsuited to his 460 pound girth), *aff'd in part, rev'd in part,* 57 F.3d 1340 (4th Cir.1995), *cert. denied,* 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996). Here, Scott has not clearly described his alleged disability nor has he described how it affects his access to services in the prison. For example, Scott does not state whether he is physically or mentally disabled. Therefore, Scott has not alleged a sufficient ADA claim.

### III.

For the reasons stated above, Counts I–IV of Scott's amended complaint will be dismissed under 28 U.S.C. § 1915A. Counts V and VI will be dismissed without prejudice and Scott may refile these in a separate civil action.

An appropriate Order will issue.