834 F.2d 389
 Randy Dean LaFAUT, Plaintiff-Appellant,
v.
William French SMITH; Margaret Hambrick; Bob Keiser,
Defendants-Appellees. (Two Cases)
Randy Dean LaFAUT, Plaintiff-Appellee,
v.
William French SMITH; Margaret Hambrick; Bob Keiser,
Defendants-Appellants.
 Nos. 86-7162, 87-7004 and 87-7005.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 8, 1987.
Decided Dec. 2, 1987.
 
 Frank Caldwell Laney, Pembroke, N.C., for appellant.
 Rudolf A. Renfer, Jr., Asst. U.S. Atty. (Samuel T. Currin, U.S. Atty., Raleigh, N.C., on brief), for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation; ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.
 
 POWELL, Associate Justice:
 
 1
 The primary question presented in this case is whether appellant, Randy Dean LaFaut, established that the treatment he received while incarcerated at the Federal Correctional Institution, Butner, North Carolina ("Butner") was cruel and unusual punishment in violation of the Eighth Amendment. We must also consider the questions whether the district court lacked jurisdiction to order a declaratory judgment in favor of appellant for a violation of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 791 et seq., and the propriety of its award of attorney's fees to appellant's counsel. For the reasons set forth below, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 On July 6, 1983 appellant, a paraplegic who has been confined to a wheelchair since 1970, commenced this lawsuit against three named defendants: William French Smith, who was then the Attorney General of the United States; Margaret Hambrick, the warden at Butner during appellant's incarceration there; and Bob Keiser, who was the acting hospital administrator at Butner when the complaint was filed. Appellant filed supplements to this complaint on December 14, 1983 and April 12, 1984. He sought declaratory and injunctive relief based on alleged violations of his rights "under the United States Constitution" resulting from his being denied adequate toilet facilities and necessary physical therapy. He also sought compensatory and punitive damages arising from this treatment, alleging that he had been subjected to cruel and unusual punishment in violation of his Eighth Amendment rights.
 
 
 3
 The case was initially referred to a magistrate who conducted an evidentiary hearing on August 5, 1985. In his Memorandum and Recommendation dated August 16, 1985 the magistrate construed appellant's complaint as alleging (i) handicap discrimination in violation of the Rehabilitation Act of 1973;[1] (ii) a claim under the Constitution for violation of the Rehabilitation Act; and (iii) a Bivens action against the named defendants in their individual capacities for violations of the Cruel and Unusual Punishments Clause of the Eighth Amendment. The magistrate found that there was a violation of the Rehabilitation Act and that Warden Hambrick had violated appellant's Eighth Amendment rights. He recommended, however, that appellant only be awarded compensatory damages of $1000 for the Eighth Amendment violation. The parties filed objections.
 
 
 4
 In a de novo review of the magistrate's Memorandum and Recommendation the district court adopted the magistrate's construction of the appellant's complaint as containing a request for declaratory and injunctive relief against the Director of the Bureau of Prisons under the Rehabilitation Act of 1973. The court agreed with the magistrate that there had been a violation of that Act and granted appellant's request for a declaratory judgment. The court declined, however, to award appellant injunctive relief since he had been released from federal prison prior to its decision.
 
 
 5
 The district court also agreed with the magistrate that appellant had failed to state a claim under the Constitution for violation of the Rehabilitation Act, and it agreed that appellant's Eighth Amendment claim against defendant's Keiser and Smith should be dismissed on the grounds that there was no evidence of their personal involvement in the alleged conduct. In contrast to the magistrate's recommendation, and despite agreeing that LaFaut had established that he had been housed at Butner for months without proper handicap facilities, the court found that LaFaut had failed to carry his burden of establishing that his treatment was due to Warden Hambrick's deliberate indifference. The court therefore dismissed appellant's Eighth Amendment claim against Hambrick.
 
 
 6
 Appellant appealed the district court's order and also moved for an award of attorney's fees pursuant to 29 U.S.C. Sec. 794a(b) and 28 U.S.C. Sec. 2412. In an order dated October 25, 1986 the district court awarded appellant's counsel $930 based on the fact that appellant had prevailed on his Rehabilitation Act claim. Appellant's counsel filed an appeal and the United States cross appealed from this order.[2]
 
 
 7
 Appellant contends that the district court erred in holding that he failed to establish that, in violation of the Eighth Amendment, Hambrick was deliberately indifferent to his basic needs.[3] In addition, LaFaut's counsel contends that the $930 in attorney's fees awarded to him by the district court was inadequate compensation for prevailing to the extent of a declaratory judgment on the Rehabilitation Act claim.
 
 
 8
 On its cross appeal from the court's award of attorney's fees, the United States contends that any award of attorney's fees was unwarranted. The United States also argues separately that the district court erred in entering judgment on the Rehabilitation Act claim because it was moot at the time of the court's decision.
 
 
 9
 We first address the district court's dismissal of appellant's Eighth Amendment claim against Warden Hambrick.
 
 II.
 
 10
 The Eighth Amendment prohibits punishments that, although not physically barbarous, involve the unnecessary and wanton infliction of pain. Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Among the inflictions of pain that are considered "unnecessary and wanton" are those that are "totally without penological justification." Gregg v. Georgia, 428 U.S. 153, 183, 96 S.Ct. 2909, 2929, 49 L.Ed.2d 859 (1976). In evaluating an Eighth Amendment claim, "[n]o static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.' " Rhodes v. Chapman, 452 U.S. at 346, 101 S.Ct. at 2399 (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)). Ultimately it is the court's judgment that will be brought to bear on the question of the acceptability of a given "punishment." Id. In considering an Eighth Amendment claim the court must be mindful that it embodies " 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency....' " Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir.1968)).
 
 
 11
 To rise to the level of an Eighth Amendment violation, however, conduct that does not purport to be punishment "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause...." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). This standard applies "whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.
 
 
 12
 A similar view of the Eighth Amendment led the Supreme Court in Estelle v. Gamble to require a plaintiff to establish that the defendant's conduct was motivated by "deliberate indifference." Id. Although in Whitley v. Albers the Court held that the "deliberate indifference" standard does not adequately capture the importance of the competing obligations that exist in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, id. 106 S.Ct. at 1085, the instant case does not involve such concerns. Whether one characterizes the treatment received by LaFaut as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in Estelle to this case. In the context of this case there is no clash between LaFaut's treatment and "equally important governmental responsibilities." Cf. Whitley v. Albers, 475 U.S. at 320, 106 S.Ct. at 1084.[4]
 
 III.
 
 13
 The facts in this case are critical to our decision. Although the district court reviewed the case de novo, its findings of fact were not substantially different from those found by the magistrate. The more important facts set forth below were found by the district court, and, except in relatively minor respects, the additional facts in the record are not in dispute. We consider first the conditions of confinement.
 
 A.
 
 14
 Soon after his arrival at Butner, on May 23, 1983, appellant was placed in a private "wet room" that had no handicap facilities. In particular: (i) The toilet in his room was surrounded on three sides by walls; (ii) the commode had no moveable toilet seat, but rather had a flange mounted on the top of the bowl that created an opening larger than that of a standard toilet seat; and (iii) there was no handicap railing. Several unfortunate consequences resulted from these conditions. The area around the toilet was too small to allow appellant to transfer to the toilet from his wheelchair. Therefore, in order to use the toilet, he had to lie on the floor, drag his body across it, and then pull himself up onto the commode. Moreover, due to the size of the toilet seat, the absence of a railing, and his atrophied leg muscles and narrowed buttocks, he would slip down into the toilet bowl water. Without a bar to steady himself, appellant also risked falling off the toilet because the position he was required to assume in order to urinate created a tendency for him to fall forward. As a result, rather than trying to use the toilet for urinating appellant relied primarily on a catheter. He did, however, continue to use the toilet for defecating.[5]
 
 
 15
 The district court found that Hambrick was aware of the conditions under which appellant was compelled to live, (App. at 97) and the record supports this finding;[6] however it was two months before any significant attempt was made to modify the toilet facilities in appellant's room.[7] Further, when this attempt failed, it was not until the end of August, more than three months after his arrival at Butner and more than a month after the failed attempt to modify the facilities in his room, that appellant was finally transferred to a room that contained adequate toilet facilities. Moreover, preparation of that room required merely the simple mounting of a handicap bar, and the transfer actually took place only after appellant had contracted a kidney infection. Because Hambrick had been aware of the problem, and its resolution could have been effected at any time by such a simple accommodation, there is no apparent justification for the three-month delay. Indeed, appellee Hambrick did not testify at the hearing and no reason or excuse was offered for this delay.
 
 
 16
 Beginning in early September 1983 LaFaut was required to work in Butner's carpentry shop. The district court found that he was unable to gain access to the toilet facilities at the shop from his wheelchair due to the narrowness of the stalls and the lack of a handicap railing. This required him to move in his wheelchair out-of-doors and up a hill to the handicap facility in the infirmary. The exertion of traveling up the hill occasionally caused him to urinate on himself. Further, once appellant reached the locked toilet facilities at the infirmary, he often was unable to locate the person with the key. As a result, he began returning to his room to use the toilet. This required him to travel, several times a day, more than a 100 yards down a hill throughout the fall and into the winter of 1983.[8]
 
 
 17
 Hambrick's reason for denying appellant's request to modify the toilet facilities in the carpentry shop was that making them accessible to the handicapped would cause them to be temporarily inoperative, and this "would be highly inconvenient for all staff and inmates who work in the area." (App. at 29). This decision was made despite the fact that Hambrick knew that appellant was required either to travel uphill in his wheelchair to a handicap toilet facility that was kept locked or travel a distance of more than 100 yards to his room. (App. at 29-30).
 
 
 18
 When appellant's work assignment was changed to the prison industries area in November 1983, again the partition between the toilets prevented him from gaining access to a toilet from his wheelchair. Only after he had acquired an infection, and a month after he had initially complained about the inadequate toilets in the prison industries area, was the partition between the toilets removed. (App. at 100). The mops and buckets that were stored in the toilet area, however, were not removed, and no handicap railing was installed. Moreover, these facilities did not provide any privacy to a user, and privacy was particularly important to appellant in light of the nature of the procedures he had to go through in order to urinate and defecate. (App. at 171).
 
 
 19
 In late December 1983, as a disciplinary measure, appellant was placed in Butner's segregation area. On those occasions when he had previously been placed in segregation he had been given a catheter because the toilet facilities could not be reached from his wheelchair and they were not equipped with handicap bars. On this occasion, however, Dr. Thomas Kibby, the staff physician at Butner, was not available and appellant was not given a catheter for several days. On January 8, 1984, while trying to use the toilet facilities in the segregation unit, appellant fell off the toilet and broke his right leg. (App. at 101).
 
 B.
 
 20
 In addition to these conditions of confinement that appellant was forced to endure, his conceded therapeutic needs were never met during his months of incarceration at Butner. Despite repeated requests for adequate rehabilitation therapy, and the reports of an orthopedic specialist and officials at Butner that he was in need of such therapy, LaFaut was never provided with ambulatory therapy while incarcerated there. Moreover, there can be no doubt that Hambrick was aware of LaFaut's therapeutic needs. On June 13, 1983 Dr. Nunley, an orthopedic specialist employed by the prison, recommended that LaFaut be transferred as soon as possible to an institution that had a physical therapist; on June 14, 1983 an official Butner classification study indicated that LaFaut needed ongoing physical therapy that was not available at Butner; and on June 27, 1983, Warden Hambrick personally wrote to the medical director at Springfield requesting that LaFaut be transferred there because Butner could not meet his medical needs. Although he was provided with some limited motion therapy involving the rotation of his ankles and toes, this was not supplied to him until July 1983, approximately two months after his arrival at Butner. Because this therapy was provided by a physician's assistant at the Butner infirmary, there is no apparent reason for the two-month delay.
 
 
 21
 Appellant eventually was transferred to a correctional institution with adequate facilities and therapy in January 1984. This occurred nearly eight months after LaFaut had arrived at Butner and only after he had made numerous formal complaints, contracted several infections, filed this action, and broken his leg.
 
 C.
 
 22
 In sum, we conclude that the conditions under which appellant was confined for nearly eight months fell far short of meeting the " 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency....' " embodied in the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir.1968)). We recognize that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. at 321, 106 S.Ct. at 1085. There is nothing in the record before us, however, to justify the inordinate delays in accommodating appellant's needs in light of the practicality and availability of various solutions. Prison officials should not ignore the basic needs of a handicapped individual or postpone addressing those needs out of mere convenience or apathy. As appellee Hambrick was the responsible official in charge of Butner, and she was fully advised both of the inhumane conditions of appellant's confinement and the failure to provide him with needed therapy, we conclude that her neglect constituted "deliberate indifference" and therefore violated the Eighth Amendment. Accordingly we reverse the district court's decision on this issue.
 
 IV.
 
 23
 The district court found that the Director of the Bureau of Prisons had violated the Rehabilitation Act of 1973, 29 U.S.C. Sec. 791 et seq. The only remedies recognized by the district court as being available for a violation of this Act were declaratory and injunctive relief, and the parties do not dispute this finding. The district court properly found that injunctive relief was unavailable because LaFaut already had been released from federal prison. Nevertheless, the court granted appellant a declaratory judgment against the Director of the Bureau of Prisons.[9]
 
 
 24
 It is elementary that "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983). An Article III court is precluded from issuing advisory opinions, Muskrat v. United States, 219 U.S. 346, 362, 31 S.Ct. 250, 256, 55 L.Ed. 246 (1911), and therefore is without jurisdiction "to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). See also Hewitt v. Helms, --- U.S. ----, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987); Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).
 
 
 25
 When the district court ordered the declaratory judgment, no dispute remained between LaFaut and the Bureau of Prisons with respect to violations of the Rehabilitation Act. Prior to the court's consideration of this case, LaFaut had been transferred from Butner to an adequate correctional facility and then released from federal prison altogether. The challenged activity had ceased and there is no suggestion that the wrong could or would be repeated. LaFaut may have derived some satisfaction from the entry of the declaratory judgment, but this would be irrelevant to the mootness issue. See Hewitt v. Helms, 107 S.Ct. at 2676.[10] Therefore, as the Rehabilitation Act claim was moot at the time it was considered by the district court, the court lacked jurisdiction to enter judgment on it. See Inmates v. Owens, 561 F.2d 560, 562 (4th Cir.1977).[11]
 
 
 26
 Both parties have appealed from the district court's award of attorney's fees. We have found that appellant's Rehabilitation Act claim was moot, and therefore an award of attorney's fees, based on the issuance of a declaratory judgment under that Act, was improper.[12]
 
 V.
 
 27
 We reverse the district court's dismissal of LaFaut's Eighth Amendment claim against Warden Hambrick and remand it to the district court for a determination of damages. On remand the declaratory judgment awarded under the Rehabilitation Act should be vacated as moot.
 
 
 28
 Reversed and Remanded.
 
 
 
 [1]
 The magistrate found that the proper defendant for the Rehabilitation Act claim was the Director of the Bureau of Prisons and ordered him named as the defendant to this claim. The complaint itself contains no claim under or specific reference to the Rehabilitation Act and does not name the Director of the Bureau of Prisons as a party to the suit. A claim under the Rehabilitation Act was introduced into the case for the first time during appellant's motion for summary judgment, and the magistrate and district court considered it. By the time this issue was considered by the magistrate it was already moot. See infra pp. 15-17
 
 
 [2]
 The United States cross appealed based on the award of attorneys fees made against it under the Rehabilitation Act claim. This claim did not affect the other defendants who did not cross appeal
 
 
 [3]
 LaFaut does not address the district court's dismissal of his Eighth Amendment claim against defendants Keiser and Smith, nor does he challenge the court's dismissal of his claim under the Constitution for a violation of the Rehabilitation Act of 1973. Therefore, we do not reach these issues
 
 
 [4]
 To the extent the district court's memorandum and order can be construed as requiring appellant to demonstrate that Hambrick "acted intentionally to deprive LaFaut of medical care," (App. at 102-03) this is erroneous. Appellant need only show that Hambrick was deliberately indifferent to his needs, not that she affirmatively intended to deprive him of the means of satisfying his needs
 
 
 [5]
 The district court found that, although it was difficult for appellant to urinate, he was able to do so because he continued to use the toilet facilities to defecate. To the extent the court places the blame on LaFaut for choosing to use a catheter rather than using the inadequate toilet facilities, this blame is misplaced. The district court appears to have ignored the fact that the process that appellant had to go through in order to urinate was materially different from the procedure required for him to defecate. Resolution of this dispute, however, is relevant only to the issue of damages because, in light of the facts that are not in dispute, it is immaterial to the cruel and unusual punishment issue
 
 
 [6]
 After being assigned to the wet room soon after his arrival at Butner, LaFaut immediately complained of the inadequate toilet facilities to prison officials. Moreover, on June 20, 1983 he filed two formal requests for administrative remedy pertaining to the conditions of his confinement. According to normal procedure such requests would be brought to the attention of the warden. On August 16, 1983 Hambrick finally wrote to appellant stating that his room and shower would be modified in accordance with standards for the handicapped
 
 
 [7]
 Sometime in July 1983 a plywood toilet seat was constructed in an attempt to reduce the opening of the commode seat in appellant's room. This seat was never mounted on the commode and appellant asserts it could not have been used anyway because the edges of it were too sharp and would irritate his skin
 
 
 [8]
 Although he was transferred to prison industries in November 1983, it was not until sometime in December that the toilet facilities there were sufficiently modified for him to be able to use them
 
 
 [9]
 The government did not appeal the district court's declaratory judgment within the required time period since it was filed more than 14 days after the first appeal and more than 60 days past the entry of the order. See Rule 4(a)(3) of the Federal Rules of Appellate Procedure and App. at 145. The appellant's subsequent motion for attorney's fees did not prevent the entry of the district court's April 1986 order from being final because the award of attorney's fees was collateral to the judgment on the merits. Cf. White v. New Hampshire Dept. of Empl. Sec., 455 U.S. 445, 451-52, 102 S.Ct. 1162, 1166-67, 71 L.Ed.2d 325 (1982); Bernstein v. Menard, 728 F.2d 252, 253 (4th Cir.1984). Nevertheless, because the appellant filed a timely notice of appeal from the judgment as a whole, this court obtained jurisdiction to review the entire judgment. Accord Hysell v. Iowa Pub. Serv. Co., 559 F.2d 468, 476 (8th Cir.1977); cf. Langnes v. Green, 282 U.S. 531, 538, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931) (the Court does not lack power to review objections urged by a respondent who has not applied for certiorari on those issues)
 Whether the Rehabilitation Act claim was moot when the declaratory judgment was entered is a jurisdictional question, North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971), that the court is obliged to consider sua sponte whenever it arises. See Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977); Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976). Therefore, we consider this issue regardless of the status of the government's appeal.
 
 
 [10]
 Although it might be argued that appellant retained an interest in receiving a declaratory judgment so as to be a prevailing party for purposes of receiving an award of attorney's fees under the Rehabilitation Act, this is not the kind of interest that can prevent an otherwise moot claim from being moot. Because the fee may be awarded only to the prevailing party, to allow this interest to prevent the claim itself from being moot would be a boot strap. The awarding of fees under the Rehabilitation Act is not compensation for the injury incurred, but rather it is a consequence of prevailing on the "case or controversy" before the court. It would be inappropriate to conclude that a "case or controversy" existed merely in order to permit the awarding of fees to a party for prevailing on a moot issue. Cf. S-1 and S-2 v. Spangler, et al., 832 F.2d 294, 297 n. 1 (4th Cir.1987)
 
 
 [11]
 There is also a serious question, that we need not decide, whether the district court properly could have considered this claim even were it not moot. See supra note 1
 
 
 [12]
 We note that a determination of mootness of a claim on the merits does not preclude an award of attorney's fees under the appropriate circumstances. See S-1 and S-2 v. Spangler, et al., 832 F.2d 294, 297 n. 1 (4th Cir.1987). Cf. Hewitt v. Helms, --- U.S. ----, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) (where a lawsuit produces voluntary action by the defendant that affords the plaintiff all or some of the relief sought through judgment, the plaintiff is deemed to have prevailed). We express no view on the appellant's entitlement to such fees because this is most appropriately determined in the first instance by the district court on remand