NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1470
_____

RANDOLPH CARSON,
                              Appellant

v.

MR. RICHARD MULVIHILL, Department Head, Public Safety;
MR. GARY MERLINE, Warden; MR. ERIC NILSON, Sergeant;
DOCTOR HUBBARD, Doctor at the Atlantic County Justice Facility;
CENTER FOR FAMILY GUIDANCE HEALTH SYSTEMS, LLC,
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-07-cv-03588)
District Judge:  Honorable Robert B. Kugler
_____

Argued January 23, 2012
Before:  FISHER, GREENAWAY, JR. and ALDISERT, *Circuit Judges*.

(Filed: July 16, 2012 )

Paige H. Forster (Argued)
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA  15222
        *Counsel for Appellant*

James T. Dugan (Argued)
Atlantic County Department of Law
1333 Atlantic Avenue, 8th Floor
Atlantic City, NJ  08401
        *Counsel for Richard Mulvihill,*
        *Gary Merline and Eric Nilson*

Wendi D. Barish (Argued)
Joseph Goldberg
Weber, Gallagher, Simpson, Stapleton,
  Fires & Newby
2000 Market Street, Suite 1300
Philadelphia, PA  19103
        *Counsel for Inez T. Hubbard and Center*
        *for Family Guidance Health Systems, LLC*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellant and Plaintiff Randolph Carson ("Carson") appeals from the judgment entered against him in the United States District Court for the District of New Jersey.  He claims that the District Court abused its discretion by refusing to appoint counsel and erred by granting summary judgment in favor of Defendants.  For the reasons discussed below, we will affirm.

## I.

We write principally for the parties, who are familiar with the factual context and legal history of this case.  Therefore, we will set forth only those facts necessary to our analysis.

Carson alleges that his constitutional rights were violated by Defendants[1] while he was a pre-trial detainee at the Atlantic County Justice Facility in New Jersey ("ACJF"), housed in the Medical Unit. Carson is unable to walk and is confined to a wheelchair. He suffers from a heart condition, asthma, and high blood pressure. During Carson's detention, he was charged a $50 per month "user fee" for room and board.

Carson claims that between December 2006 and August 2007, a second person was sometimes housed in his one-man cell, and when his cell was locked overnight, he could not maneuver his wheelchair around the extra bed to access the toilet. After Carson handed in his complaint to his social worker on July 23, 2007, ACJF officials agreed that they would not place a second person in his cell absent emergency circumstances.

Carson also claims that at some point during the same time period, he was denied asthma medication. He was experiencing breathing problems, and went to see Dr. Inez Hubbard, who provided medical services at the ACJF. He asked her for asthma medication, but after an evaluation, she explained that she could not give him asthma medication because he did not have asthma. Carson told her that he had a prescription for asthma medication, and so Dr. Hubbard gave him a release form to provide information and authorize her to obtain the alleged prescription. Carson later stated in his

---

[1] Defendants include individuals and an organization associated with the ACJF: Richard Mulvihill, Department Head of Public Safety for Atlantic County; Gary Merline, Warden of the ACJF; Eric Nilson, Sergeant in the ACJF; the Center for Family Guidance Health Systems ("CFG"), which contracted with Atlantic County to provide medical services at the ACJF; and Dr. Inez Hubbard, who was an employee with CFG from December 22, 2006 until September 27, 2007.

deposition that he was not on asthma medication at the time that he was incarcerated, and that he had not been taking asthma medication since 2000. Although Dr. Hubbard did not give Carson asthma medication, he claims that after she left, the ACJF eventually provided him with asthma medication. At some point after Carson obtained asthma medication, a prison fight ensued, resulting in a search of all prison cells in the unit. During the search, a sergeant found Carson's inhaler and confiscated it on the basis that it was "not authorized" according to the medical staff on duty.

At another point, Carson wrote a letter requesting medical footrests, and claiming that the lack of footrests caused him to drag his feet and placed stress on his heart. Defendants produced affidavits showing that the Director of Nursing and the Health Services Administrator considered Carson's requests, but determined that footrests would offer no therapeutic benefit and cited concerns that the footrests could be used as weapons. As an alternative, they gave Carson instruction on range of motion exercises. Carson claims that other detainees were given wheelchair footrests, crutches, and canes.

Additionally, Carson alleges that on June 4, 2007, ACJF Sergeant Eric Nilson verbally and physically assaulted him. Carson apparently expressed consternation that Nilson was about to place another inmate in his cell with him. According to Carson, Nilson "grabbed" his wheelchair, swung it around, and "launch[ed]" Carson "forward from the cell door directly into the steel bed." Carson claims that this action hurt his legs, requiring him to apply ice packs, and caused him to experience chest pains.

4

On August 1, 2007, Carson filed a *pro se* complaint alleging that these various actions by Defendants violated his constitutional rights. He repeatedly requested counsel through an application and letters to the District Court and the Magistrate Judge. The Magistrate Judge denied the motion for counsel. Defendants filed motions for summary judgment, which the District Court granted on September 29, 2009. *See Carson v. Mulvihill*, No. 07-3588, 2009 WL 3233482 (D.N.J. Sept. 29, 2009). On January 20, 2010, Carson filed a notice of appeal.[2]

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. Although the District Court's order granting summary judgment was filed almost four months before the notice of appeal, cross-claims remained outstanding, and thus, the order was not initially an appealable final judgment. *Owens v. Aetna Life & Casualty Co.*, 654 F.2d 218, 220 n.2 (3d Cir. 1981). The judgment became final and appealable when the cross-claims were dismissed on June 30, 2011, and Carson's notice of appeal became effective as of that date. Fed. R. App. P. 4(a)(2); *see also Bethel v. McAllister Bros.*, 81 F.3d 376, 382 (3d Cir. 1996).

## III.

Carson appeals from the District Court's decision to deny counsel and to grant Defendants' motions for summary judgment. "[W]e review the district court's decision to deny counsel for an abuse of discretion." *Parham v. Johnson*, 126 F.3d 454, 457 (3d

---

[2] We thank pro bono counsel for their able representation of Carson on appeal.

5

Cir. 1997). We review de novo a grant of summary judgment. *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008). We will affirm only if "there is no genuine [dispute] as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *In re Color Tile Inc.*, 475 F.3d 508, 512 (3d Cir. 2007) (citation omitted). We "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id*. "Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

## A.

Carson argues that the District Court abused its discretion by refusing to appoint counsel on his behalf. We disagree. Unlike criminal litigants, indigent civil litigants have no constitutional right to counsel. *Parham*, 126 F.3d at 456. Rather, district courts have "broad discretion to determine whether appointment of counsel is warranted" in civil cases, and must make a "case-by-case" determination, taking a number of factors into account. *Tabron v. Grace*, 6 F.3d 147, 156-58 (3d Cir. 1993). As a threshold matter, a plaintiff may not secure appointment of counsel unless his claim "ha[s] some merit in fact and law." *Parham*, 126 F.3d at 457. Next, courts must consider the *Tabron* factors, a non-exhaustive list of factors that is intended "to aid district courts in determining when it is proper to appoint counsel for an indigent litigant in a civil case." *Id*. (construing *Tabron*). Additionally, courts

> "must take note of the significant practical restraints on the district courts'
> ability to appoint counsel: the ever-growing number of prisoner civil rights
> actions filed each year in the federal courts; the lack of funding to pay

6

appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation."

*Tabron*, 6 F.3d at 157.

For purposes of this analysis, we will assume that Carson's claims had arguable merit and that they therefore met the threshold requirement for appointment of counsel. Turning next to the *Tabron* factors, we agree with the District Court that several factors weigh in favor of appointing counsel. For example, credibility determinations would likely be very important, and Carson was unable to provide his own counsel. The case was also fact-intensive, and presented some challenging discovery and investigative issues. Despite these difficulties, we agree with the District Court that the balance of the factors overall did not warrant the appointment of counsel. For example, Carson's case was not especially complex, and he was amply able to represent himself. The case involved several Due Process allegations, and although some cases involving a prisoner's medical treatment might present complex issues, *see*, *e.g.*, *Montgomery v. Pinchak*, 294 F.3d 492, 502 (3d Cir. 2002), this case does not. At issue are basic disputes regarding the amount of space in Carson's cell, his access to wheelchair footrests and asthma medication, and the minimal fee that he was required to pay. Furthermore, Carson was able to present his case without the assistance of counsel. He successfully filed a complaint, submitted a pretrial motion, served interrogatories, and requested production of documents. He has expressed frustration with the discovery process, and his lack of familiarity with the "legal" jargon, but was nonetheless able to present his case before the

7

District Court.  Finally, expert testimony would not have helped Carson's case to withstand summary judgment.  *Cf. Parham*, 126 F.3d at 460 (district court's denial of appointment of counsel is troubling where the lack of expert testimony is the basis for dismissing the case).  Defendants' summary judgment motions did not challenge Carson's injuries or lack of expert medical proof; rather, they challenged Carson's failure to prove that Defendants knew of and disregarded a risk to Carson's health or that Defendants acted with an illegitimate or irrational purpose.  In sum, we find no abuse of discretion in the District Court's reasoning that Carson was sufficiently able to handle the case on his own.

**B.**

Carson argues that the District Court erred by granting summary judgment in favor of Defendants.  We disagree.  Carson raised Due Process and Equal Protection claims before the District Court, pursuant to 42 U.S.C. § 1983.  To prove a § 1983 claim, a plaintiff must show that a person acting under color of state law deprived him of rights secured by the Constitution or laws of the United States.  *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  As discussed below, Carson failed to raise a genuine dispute of material fact as to whether his constitutional rights were violated.

1. **Due Process Claims**

In the seminal case of *Bell v. Wolfish*, the Supreme Court established that pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment.  441 U.S. 520, 535-37 (1979); *Boring v. Kozakiewicz*, 833

8

F.2d 468, 471 (3d Cir. 1987). The rationale is that the Eighth Amendment protects convicted inmates from "cruel and unusual punishment," but a pre-trial detainee "may not be punished [at all] prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. Thus, a pre-trial detainee may be subject to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37.

Carson argues that Defendants violated his Due Process rights through (a) the conditions of his confinement, (b) inadequate medical treatment, (c) excessive force, and (d) imposition of an unconstitutional housing fee. We will address each claim below.

### a.        *Conditions of Confinement Claim*

Carson complains that during certain overnight periods, when the ACJF was forced to double-bunk inmates, he had to wait until morning to use the toilet because he was unable to maneuver his wheelchair around the extra bed.[3]

When a pre-trial detainee claims that the conditions of his confinement violate his due process rights, "the proper inquiry is whether those conditions [at issue] amount to punishment of the detainee." *Bell*, 441 U.S. at 535. *Bell* established a two-prong standard for determining whether conditions of confinement violate Due Process: whether the questioned "restrictions and practices" (1) "are rationally related to a

---

[3] Defendants argue that Carson's claim should fail because officials eventually agreed that Carson should have a one-man cell absent emergency circumstances. This argument is meritless; even if past constitutional violations have ceased, an inmate can still sue for damages, *Winsett v. McGinnes*, 617 F.2d 996, 1004 (3d Cir. 1980), and so certainly a pre-trial detainee may do so as well.

legitimate nonpunitive governmental purpose[,]" and (2) "whether they appear excessive in relation to that purpose." *Id.* at 561. The first prong of the *Bell* analysis requires a two-part inquiry, analyzing "first, whether any legitimate purposes are served by [the] conditions [of confinement], and second, whether these conditions are rationally related to these purposes." *Hubbard v. Taylor*, 399 F.3d 150, 159 (3d Cir. 2005).

Turning to Carson's claim, we begin with the principle that mere double-bunking does not constitute punishment, because there is no "'one man, one cell' principle lurking in the Due Process Clause of the Fifth Amendment." *Bell*, 441 U.S. at 542. Nonetheless, "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment[.]" *Id.* For example, we found a constitutional violation where the conditions of confinement were "unsanitary and humiliating" in *Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 996 (3d Cir. 1983). In that case, pre-trial detainees were double-celled, resulting in mattresses being placed next to toilets on the floors of small (five-foot by seven-foot) cells. *Id.* at 988.

Carson attempts to analogize his case to *LeFaut v. Smith*, 834 F.2d 389 (4th Cir. 1987) and *Johnson v. Lewis*, 217 F.3d 726 (9th Cir. 2000), where the Fourth and Ninth Circuits found Eighth Amendment violations because convicted prisoners' lack of toilet access resulted in deplorably unsanitary conditions. *See LeFaut*, 834 F.2d at 392-94 (wheelchair-bound plaintiff housed in location without handicap facilities had to drag

10

himself to the toilet, and would sometimes slip down into the toilet bowl water); *Johnson*, 217 F.3d at 730 (prisoners forced to wait outside in prison yard for four days and lack of toilet resulted in extremely unsanitary conditions). We are not persuaded by Carson's argument. Despite his attempts to analogize his case to *LeFaut* or *Johnson*, he does not claim any deprivation that is even akin to the deplorable conditions in those cases.

The conditions of which Carson complains simply do not rise to the level of punishment because the conditions were rationally related to the nonpunitive purpose of housing inmates, and did not appear to be excessive. At most, Carson complains of an inconvenient and uncomfortable situation, but, as the District Court noted, "the Constitution does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). We find no error in the District Court's grant of summary judgment on this issue.

### b.     *Inadequate Medical Treatment Claims*

Carson argues that his Due Process rights were violated when he was denied prescription asthma medication, and when it was later confiscated after he had eventually obtained it.[4] He also claims that his Due Process rights were violated by the denial of wheelchair footrests. We disagree.

As a threshold matter, the parties dispute exactly what standard should be applied to analyze a Due Process claim in the context of inadequate medical treatment. Carson

---

[4] In his brief, Carson also claims that he was refused medication for "other conditions," but fails to explain or discuss what other medication or conditions he is referring to. Thus, we will address only the issue regarding his asthma medication.

argues that we should apply *Bell*'s two-pronged legitimate purpose standard, whereas

Defendants argue that *Bell* is limited to conditions of confinement claims, and that for

inadequate medical treatment claims, we should apply the Eighth Amendment deliberate

indifference standard from *Estelle v. Gamble*, 429 U.S. 97 (1976).[5] We need not resolve

today which standard applies because even under the *Bell* standard, which is arguably

more protective of pretrial detainees' rights than the *Estelle* standard, we will affirm the

District Court's determination that Carson's Due Process rights were not violated.

Turning to Carson's claims, we find that pursuant to *Bell*, the ACJF had

legitimate, nonpunitive purposes for its determinations regarding Carson's asthma

medication and wheelchair footrests. First, the denial of asthma medication was

warranted because when Dr. Hubbard evaluated Carson, she determined that he did not

have asthma. Although Carson claimed he had a prescription, he admitted in his

deposition that, in fact, at the time that he was incarcerated he had not been on asthma

medication for quite some time. Thus, it is clear that Dr. Hubbard denied him medication

for the legitimate reason that he was no longer on asthma medication and did not appear

to have asthma. We "disavow any attempt to second-guess the propriety or adequacy of a

particular course of treatment . . . (which) remains a question of sound professional

judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)

(quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

---

[5] *Estelle* requires proof that the inmate (1) had a serious medical need, and (2) that prison officials were deliberately indifferent to that need. *Estelle*, 429 U.S. at 103-04.

Second, the confiscation of Carson's inhaler was warranted because the staff sergeant who found it following a prison fight believed that the inhaler was "not authorized" according to the medical staff on duty. This was a legitimate and nonpunitive purpose for confiscating the inhaler, even if, as Carson claims, the sergeant or medical staff were incorrect. As Defendants explain, "[t]here is a legitimate government interest in ensuring that prison inmates only receive prescription drugs that are necessary. . . . [because] doing so . . . avoids needless costs and prevents prisoners from abusing prescription medications."

Finally, Carson was denied wheelchair footrests because the Director of Nursing and the Health Services Administrator determined that footrests would offer no therapeutic benefit, and cited concerns that the footrests could be used as weapons. Thus, Carson was denied footrests for legitimate, nonpunitive reasons. The denial of footrests was not excessive, given the fact that health professionals determined Carson did not need them in the first place, and especially since he was prescribed alternative treatment.

In sum, we find no constitutional violation under *Bell*, let alone any sign of deliberate indifference under *Estelle*. Thus, the District Court did not err in granting summary judgment to Defendants on this claim.[6]

### c. *Excessive Force Claim*

Carson claims that Sergeant Eric Nilson used excessive force against him, in violation of his Due Process rights, when he forced Carson into his cell by "launch[ing]" him through the cell door and into his steel bed. We disagree. Since *Bell*, we have only addressed excessive force claims by pre-trial detainees where the claim "ar[ose] in the context of a prison disturbance." *Fuentes v. Wagner*, 206 F.3d 335, 347 (3d Cir. 2000). There, we applied the Eighth Amendment standard rather than *Bell* because we cannot expect prison guards to draw distinctions between sentenced and unsentenced inmates while they are trying to stop a prison disturbance. *Id.* We need not decide today what standard should apply to isolated incidents of excessive force that are unrelated to a prison disturbance, because even under the *Bell* standard, we will affirm the District Court's determination that Carson's Due Process rights were not violated.

---

[6] Carson argues that we should reverse the District Court with regard to the asthma medication issue, because it failed to explain its reasoning for granting summary judgment on that claim. However, we find that any error in the District Court's failure to explain its reasoning was harmless pursuant to Federal Rule of Civil Procedure Rule 61 because we agree with the District Court's decision to grant Defendants' motion for summary judgment on the asthma medication issue. *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc) ("We may affirm the District Court on any grounds supported by the record.").

14

Carson argues that plaintiffs with minor injuries such as his have withstood summary judgment. However, multiple factors besides the level of injury go into the analysis of whether force in any given case is excessive. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In the cases cited by Carson, where injuries were treated with ice packs, *Smith v. Mensinger*, 293 F.3d 641, 645 (3d Cir. 2002), and consisted of "superficial lacerations and abrasions[,]" *Brooks v. Kyler*, 204 F.3d 102, 109 (3d Cir. 2000), the allegations regarding the use of force were quite serious. In *Brooks*, the plaintiff was punched and choked, *id*. at 105, and in *Smith*, several officers "rammed Smith's head into walls and cabinets" and kicked, punched, and choked him. 293 F.3d at 644.

The facts Carson alleges simply do not show that the prison guard lacked a legitimate nonpunitive purpose for his actions, or that the force was excessive. At most, Carson has alleged that in an attempt to force him into his cell, the prison guard pushed Carson's wheelchair rapidly and harshly through his cell door, causing him to fall sharply onto his bed inside the door. But "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action[,]" and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights[.]" *Hudson*, 503 U.S. at 9; *see also id.* at 10 ("[D]e minimis use[] of physical force" is not excessive, provided that such use of force "is not of a sort 'repugnant to the conscience of mankind.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986))). Because Carson has alleged, at most, a malevolent shove by Nilson, we find no Due Process violation.

15

### d. Housing Fee Claim

Carson claims the $50-per-month "user fee" for room and board constituted a fine, which violates his Due Process right to be free from punishment until proven guilty. We disagree. In *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 420 (3d Cir. 2000), we specifically held that such fees are not punishment, but are rather "designed to teach financial responsibility." Furthermore, we explained that "[m]ore fundamentally, the fees can hardly be called fines when they merely represent partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." *Id*.

Carson argues that *Tillman* does not control, because unlike him, the plaintiff in that case was a convicted prisoner. We agree that the Eighth Amendment legal standard applied in *Tillman* does not control, but *Tillman* is relevant not because of its legal standard, but because of its holding that housing fees are not punishment. The fees are nonpunitive and related to the legitimate purpose of partially reimbursing the government for housing expenditures. Thus, the fines do not violate the *Bell* requirement that pre-trial detainees not be subject to punishment.

### 2. Equal Protection Claim

On appeal, Carson argues that he raised a "class of one" Equal Protection claim in the District Court, when he argued that he should not have been denied wheelchair footrests while other prisoners were permitted footrests, crutches, and canes. Carson argues that the District Court erred in failing to address his "class of one" Equal

16

Protection claim. We disagree. It is far from clear that Carson's assertions regarding alleged discrepancies constituted an Equal Protection claim, considering that he discussed these discrepancies in an effort to prove his Due Process claim by showing that the ACJF did not have a legitimate reason for denying him wheelchair footrests. To the extent that Carson raised such a claim, the District Court granted Defendants' motions for summary judgment "on all claims contained in [Carson's] complaint." *Carson v. Mulvihill*, No. 07-3588, 2009 WL 3233482, at *7 (D.N.J. Sept. 29, 2009).

Even assuming the District Court erred in failing to more explicitly identify or address a "class of one" Equal Protection claim, any such error was harmless, *see* Federal Rule of Civil Procedure Rule 61, because we find such a claim to be meritless and "may affirm . . . on any grounds supported by the record." *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc). A "class of one" Equal Protection claim requires a plaintiff to show that he "was intentionally treated differently from others similarly situated . . . and that there was no rational basis for such treatment." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Carson does not allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment.

## IV.

For the reasons set forth above, we will affirm the order of the District Court.

17